UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NORTH AVENUE CAPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:20-CV-0354-G |
| APPOGEE KAZMIRA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendant, APPoGee Kazmira, LLC,

("Appogee") to dismiss the claims of the plaintiff North Avenue Capital, LLC,

("NAC") for lack of personal jurisdiction, for improper venue, or, in the alternative,

to transfer this case to the United States District Court for the District of Colorado

or to the United States District Court for the Northern District of Illinois, pursuant

to 28 U.S.C. § 1406 (docket entry 11).  For the reasons set forth below, Appogee's

motion to dismiss for lack of personal jurisdiction is granted, and its motions to

dismiss for improper venue, or, in the alternative, to transfer venue are denied as

moot.

## I.  BACKGROUND

NAC, a Georgia limited liability company with its principal place of business

in Dallas County, Texas, is a specialized commercial lender that funds loans through

the United States Department of Agriculture ("USDA") Business & Industry Loan program.  Plaintiff's Second Amended Complaint ("Complaint") (docket entry 10) ¶¶ 4, 7.  NAC's 22 members include citizens of Florida, Georgia, Maine, Nevada, Oklahoma, Tennessee, and Texas.  *Id*. ¶¶ 4, 6.  Accordingly, NAC is a citizen of these states.[*]

Appogee, a real estate holding company, is a Colorado limited liability company with its only place of business in Watkins, Colorado.  *Id*. ¶ 5; Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Improper Venue ("Motion") (docket entry 12) at 2.  Appogee's only members are Anil Oroskar ("Oroskar") and Asha Oroskar, citizens of Illinois.  Appendix to Defendant's Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Improper Venue ("Appogee Appendix") (docket entry 13) at App. 001.  Accordingly, Appogee is a citizen of Illinois.  Appogee contends that it "has never leased or owned property in Texas; it has never maintained an office or other facilities in Texas; it has never paid taxes in Texas; and it has never been a party to a lawsuit in Texas state or federal court (apart from the present suit)."  Motion at 2-3.

---

[*]    The citizenship of a limited liability company is determined by the citizenship of all of its members.  See, *e.g.*, *Harvey v. Grey Wolf Drilling Company*, 542 F.3d 1077, 1080 (5th Cir. 2008) (citations omitted).

Appogee's sole purpose is to hold title to the property located at 34501 East Quincy Avenue, Watkins, Colorado 80137 ("the Property"). *Id*. at 2; Complaint ¶ 7. The Property houses several commercial tenants, including Kazmira, LLC, "an industrial scale producer of THC-free broad spectrum CBD oil, CBD isolate, and water soluble CBD, who grows hemp and produces its THC-free broad spectrum CBD at this location." Complaint ¶ 7; *see also* Motion at 2.

Appogee sought to refinance the Property and to gain working capital. Appogee Appendix at App. 001; *see also* Plaintiff North Avenue Capital, LLC's Response to Defendant Appogee Kazmira, LLC's Motion to Dismiss ("Response") (docket entry 17) at 7. To that end, on May 24, 2019, NAC began to work with Appogee to secure a commercial loan from the USDA. Response at 7; Plaintiff's Appendix: Evidence in Support of Plaintiff's Response to Defendant's Motion to Dismiss (docket entry 17-1) at 001. By telephone and other electronic means, NAC Senior Loan Architect Clint Justice ("Justice"), based at the NAC office in Dallas, Texas, NAC Commercial Lender Ben Mathewson ("Mathewson"), based in NAC's office in Henderson, Nevada, and Appogee representative George Gianares, based in Illinois, worked together in an effort to structure a deal. Response at 7-9; Motion at 3; Appogee Appendix at App. 002. Mathewson was Appogee's primary contact at NAC. Reply in Support of Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Improper Venue ("Reply") (docket entry 18) at

2.  Ultimately, by telephone and other electronic means, the parties negotiated a term sheet ("Term Sheet") related to NAC's efforts to secure a loan from the USDA on behalf of Appogee.  Appogee Appendix at App. 002.

On June 19, 2019, Mathewson, on behalf of NAC, executed the Term Sheet. *Id*.; Reply at 2; *see also* Appogee Appendix at App. 003-004.  The Term Sheet, in the form of an engagement letter from Mathewson to the Oroskars read in pertinent part, as follows.

> June 19, 2019
>
> Dr. Anil Oroskar
> Dr. Asha Oroskar
> 34501 E Quincy Ave, Bldg 65
> Suite C
> Watkins, CO 80137
>
> RE:  Loan Request
>
> North Avenue Capital, LLC (NAC) is pleased to have this opportunity to present the following terms for a USDA commercial loan.

| | |
|---|---|
| **Borrower**: | Appogee Kazmira, LLC |
| **Loan Purpose**: | To refinance existing debt, providing working capital, and pay for soft costs associated with the loan. |
| **Loan Amount**: | $10,000,000.00 |
| **Term**: | 26 years |
| **Interest Rate**: | WSJ Prime Rate plus 1.50%, adjusted quarterly |

- 4 -

Proposed rate applicable only as of this date and subject to change unless and until rate is formally locked

**Collateral**:                34501 East Quincy Avenue, Watkins, CO 80137

**Guarantor**:                Anil Oroskar 100%
                              Asha Oroskar 100%

                              \*\*\*

**No Shop**:                  For a period of 4 months from the date above, NAC will be the Borrower's exclusive government guaranteed lender and the Borrower agrees not to engage with any other financial institution for any government guaranteed debt-financing.

**Break-Up Fee**:             During the exclusivity period, the Borrower agrees to pay NAC a break-up fee of 1% of the loan amount if the Borrower elects not to complete a transaction with NAC or if the Borrower completes a financing transaction secured by the aforementioned Collateral.  No break-up fee is owed if the USDA rejects the loan.

**Agreement Term**:           *The terms of this agreement expire 10 business days from the date shown above.  If this agreement is not executed prior to expiration, the terms may change and a new agreement will be required.*

                              \*\*\*

- 5 -

> Should you have any questions or like to discuss, please
> feel free to contact me at 402-304-9142 or via email at
> bmathewson@northavenue.com.
>
> Sincerely,
> [*/s/ Ben Mathewson*]
> Ben Mathewson

Appogee Appendix at App. 003-004 (emphasis in the original); *see also* Complaint ¶ 8

("Defendant negotiated the terms of the Engagement Agreement wherein NAC

reduced its normal break-up fee from 2% to 1%, and also reduced its normal

exclusivity period from 12 months to 4 months.").

The Term Sheet bore NAC's Nevada address.  Motion at 3 n.4, 6; *see also* Appogee

Appendix at App. 003-004.

That same day, Oroskar, on behalf of Appogee, executed the Term Sheet and

wired a non-refundable $5,000 retainer to a bank in Arkansas at the direction of

NAC to cover initial underwriting costs, credit reports, and other expenses, including

travel costs for a site visit to the Property per the terms of the Term Sheet.  Appogee

Appendix at App. 002; Motion at 3 n.6; Response at 8; Complaint ¶ 9.

On February 13, 2020, NAC filed this suit against Appogee based on diversity

of citizenship jurisdiction under 28 U.S.C. § 1332.  *See* Plaintiff's Original Complaint

(docket entry 1) ¶ 2.  On March 26, 2020, NAC filed its second amended complaint.

*See generally* Complaint.  NAC seeks a declaratory judgment and also asserts a claim

for breach of contract.  *Id*.  Specifically, NAC alleges that Appogee breached their

agreement by securing financing through Timio Consulting, another lender, within the Term Sheet's four-month exclusivity period.  *Id*. ¶ 10.  Appogee asserts that "the alleged breach of the Term Sheet (Appogee securing alternative financing) . . . occurred in Illinois."  Motion at 11.

Appogee moves to dismiss the action for lack of personal jurisdiction and for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3), or, alternatively, to transfer venue.  *See generally* Motion.

## II.  ANALYSIS

### A.  The Factual Standard:  A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction.  *Id.*

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff.  *Id.*  In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of

recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th

Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*,

755 F.2d 1162, 1165 (5th Cir. 1985). Then court is not required to accept as true

conclusory allegations, even if uncontroverted, in its prima-facie-case analysis. *Panda

Brandywine Corporation v. Potomac Electric Power Company*, 253 F.3d 865, 869 (5th Cir.

2001).

### B. The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident

defendant if (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by

the forum state is consistent with due process under the United States Constitution.

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the

personal jurisdiction of a federal court sitting in diversity to the same extent that it

would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore

v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction. *Id*. Because the Texas long-arm statute confers jurisdiction to the limits

of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*,

197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.

Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on*

- 8 -

*other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal

due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*,

20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041, *et seq.*

(Texas long-arm statute).

### C.  Due Process Requirements

#### 1. *Minimum Contacts*

Due process requires the satisfaction of three elements to exercise personal

jurisdiction over a nonresident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on its part such

that the nonresident defendant could anticipate being haled into the courts of the

forum state; (2) the claim must arise out of or be related to those activities; and (3) it

must be fair or reasonable to require the nonresident to defend the suit in the forum

state.  *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*,

548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462,

474-78 (1985).  The Due Process Clause ensures that persons have a "fair warning

that a particular activity may subject [them] to the jurisdiction of a foreign

sovereign."  *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186,

218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must

do some act by which it "purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Id.* at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citations omitted). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. See, *e.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant:  specific jurisdiction and general jurisdiction. General jurisdiction may be found when the nonresident's contacts with the forum are "so continuous and systematic as to render [the nonresident] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations and citations omitted). Specific jurisdiction, on the other hand, exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the

forum related to the particular controversy, the court is exercising 'specific jurisdiction.'"  *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"  *Id*. at 475 (citations omitted).  A plaintiff must establish a substantial connection between the nonresident defendant and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry:  "no single factor, particularly the number of contacts, is determinative."  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is

determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

### 2. *Fair Play and Substantial Justice*

The due process inquiry limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### D. Application of the Personal Jurisdiction Standards

### 1. *General Jurisdiction*

The claims against Appogee in this case relate to its contact with Texas, and NAC has not alleged that Appogee had continuous and systematic contacts with Texas outside of these claims. Therefore, the court will not address the issue of general jurisdiction.

### 2. *Specific Jurisdiction*

### a. Minimum Contacts

NAC maintains that Appogee has sufficient minimum contacts with Texas for this court to exercise personal jurisdiction over Appogee. *See generally* Response.

Specifically, NAC asserts that Appogee is subject to personal jurisdiction in this court due to Appogee's decision to enter into a contract with NAC, and because NAC's Dallas office performed work prior to the execution of the Term Sheet, analyzed and compiled data, and daily communicated with Appogee. *Id*. at 9-12.

Appogee, on the other hand, argues that it lacks sufficient minimum contacts with Texas to justify this court's exercise of personal jurisdiction over it. *See generally* Motion. In particular, Appogee asserts that it sought refinancing for a property in Colorado, not Texas. *Id*. at 6. Appogee maintains that it "does not operate outside of Watkins, Colorado, and certainly has *no contacts* in Texas." *Id*. at 2 (emphasis in the original); *see also* Reply at 1 ("NAC does not, and cannot, dispute that its alleged services here related to the refinancing of property located *in Colorado*; or that Appogee is a *Colorado* land-holding company that does not engage in any business in Texas (or anywhere outside Colorado for that matter . . . .") (emphasis in the original). Appogee argues that "[w]hile NAC's Texas office may have worked on the file, *NAC's* staffing decisions cannot be used to show that *Appogee* purposely directed its activities to Texas." Reply at 3 (emphasis in original); see also *id*. at 1 ("Nor can NAC point to anything in the parties' negotiations, or the Term Sheet ultimately executed by the parties, that required NAC to perform work in Texas or indicated that any part of the underlying transaction would be performed in Texas."). Additionally, Appogee contends that NAC and Appogee negotiated the Term Sheet

over the telephone and via electronic mail, and at no point did an Appogee representative travel to Texas to meet with NAC.  Motion at 6.

Even when all of NAC's factual allegations are taken as true, NAC has failed to establish a *prima facie* case that Appogee purposefully availed itself of the privilege of conducting business within Texas.  See *Burger King*, 471 U.S. at 475.  The fact that a nonresident has entered into a contract with a resident of the forum does not automatically establish sufficient minimum contacts with that forum.  *Id*. at 478; see also *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of . . . engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007); *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999) (citations omitted); *Stuart*, 772 F.2d at 1193.  In determining whether a contractual relationship does establish sufficient minimum contacts, the Fifth Circuit has repeatedly looked to the following language from the Supreme Court's decision in *Burger King*:

> It is these factors – prior negotiations and contemplated
> future consequences, along with the terms of the contract

> and the parties' actual course of dealing – that must be
> evaluated in determining whether the defendant
> purposefully established minimum contacts with the
> forum.

*Burger King*, 471 U.S. at 479.  When these factors are taken into account, NAC has failed to show that Appogee purposefully established minimum contacts with Texas.

Appogee representatives never traveled to Texas to negotiate or to execute the Term Sheet with NAC or to conduct any business with NAC.  The negotiation and execution of the Term Sheet between NAC and Appogee was done solely and exclusively via telephone conversation and email correspondence.  Appogee's telephone calls and correspondence directed to NAC in Texas, without more, are legally insufficient to allow for the exercise of specific personal jurisdiction.  See, *e.g.*, *Holt Oil*, 801 F.2d at 778 (communications to Texas forum insufficient to confer specific jurisdiction over nonresident defendant where communications to forum rested on mere fortuity that plaintiff was a resident of that forum).

NAC has not demonstrated that Appogee has purposefully directed its activities toward Texas, that it has purposefully availed itself of the benefits and protections of Texas law, or that it could reasonably foresee being haled into court in Texas.  Appogee, therefore, has not purposefully availed itself of the privileges and protections of Texas law merely by contracting with NAC or by communicating with NAC in Texas, despite the fact that NAC's principal place of business is in Dallas County, Texas.

- 15 -

### b. Fair Play and Substantial Justice

The second prong of the due process analysis limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Because NAC has not established that Appogee has sufficient minimum contacts with Texas to subject it to personal jurisdiction in this forum, the court "need not determine whether the exercise of personal jurisdiction here would comport with notions of fair play and substantial justice." *Ham v. La Cienega Music Company*, 4 F.3d 413, 416 n.15 (5th Cir. 1993).

NAC has failed to show that Appogee has the requisite minimum contacts with Texas to permit the court to exercise personal jurisdiction over it.  Accordingly, Appogee's motion to dismiss for lack of personal jurisdiction is granted.

### III.  CONCLUSION

For the reasons stated above, Appogee's motion to dismiss for lack of personal jurisdiction is **GRANTED**, and its motions to dismiss for improper venue or, in the alternative, to transfer venue are **DENIED** as moot.

**SO ORDERED.**

December 10, 2020.

_A. Joe Fish_____
**A. JOE FISH**
**Senior United States District Judge**